UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Samuel Johnson,

                  Petitioner,

   -vs-

John Burge,
Superintendent,

                 Respondent.

_____

**DECISION AND ORDER
No. 05-CV-0633T**

## I. Introduction

*Pro se* petitioner Samuel Johnson ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered October 3, 2002, in the Supreme Court, State of New York, Monroe County, convicting him, after a jury trial, of Robbery in the First Degree (New York Penal Law ("Penal Law") § 160.15(4)). For the reasons stated below, the petition is denied.

## II. Factual Background and Procedural History

The charges arise out of a robbery that occurred on November 6, 2001 in Rochester, New York.

At approximately 3:00 p.m. on November 6, 2001, the employees at the "Fleet Bank" ("the bank"), located at 671 Park Avenue in the City of Rochester, were preparing to close when Petitioner entered the bank. Trial Transcript (T.T.) 154-57. Petitioner approached

1

the teller window where Kendra Farrier ("the teller") was working and handed her a note that said, "I have a gun". T.T. 225-227. Petitioner leaned on the counter in front of the teller with his hands in his pocket. He told the teller not to "pull anything" and instructed her to fill a bag with money, which she did and also added a dye pack. She then handed the bag to Petitioner, who took the bag and the note and left the bank. T.T. 228-231.

The bank manager, Carl Nasello ("Nasello"), was watching closely from his office. He became concerned when he saw Petitioner leaning on the counter in front of the teller. The teller was making eye contact with Nasello and looked nervous. Knowing that customers do not typically ask for bank bags, and seeing that the teller was noticeably nervous, Nasello pulled the silent alarm to signal to the police that the bank was being robbed. T.T. 156-60. Nasello was approximately ten feet from Petitioner when Petitioner took the bag and went toward the door, close enough that Nasello was able to get a full view of Petitioner's face. T.T. 160-61. After Petitioner exited the bank, Nasello watched Petitioner get into a black Blazer. T.T. 162. As Petitioner pulled away, Nasello saw the dye pack explode, causing paint and smoke to be released. Petitioner stuck his head out of the window, enabling Nasello to get another look at Petitioner's face. T.T. 162. Nasello called out Petitioner's license plate

2

number to his co-workers, grabbed his keys, and left to follow Petitioner. T.T. 162-64.

During his pursuit of Petitioner, Nasello kept contact with a 911 operator. Petitioner eluded Nasello by going the wrong way down a one way street. T.T. 165-68.

At approximately 3:55 p.m., Petitioner called police and reported his vehicle stolen. Police told Petitioner to meet him at a certain corner, but Petitioner never appeared. At approximately 6:40 p.m., Petitioner showed up at the police station. He indicated to police that his car had been stolen. T.T. 258-60, 304. Police, however, suspected Petitioner was the individual who had robbed the bank earlier that day, and asked to speak to him regarding his allegedly stolen vehicle. T.T. 260. Police eventually located the black Blazer in a parking lot off of Karges Place in the City of Rochester. A search of the Blazer revealed the note used in the bank robbery as well as Petitioner's driver's license and various clothing items. T.T. 324-326.

At trial, a surveillance video of the actual bank robbery was admitted as evidence. Although the tape was of marginal quality, a still photograph created from the videotape depicted a mask around the neck -- not over the face -- of the perpetrator. A mask, which looked similar to the mask worn by the robber in the still photograph, was also admitted into evidence at trial, for demonstrative purposes. T.T. 265.

3

Petitioner testified on his own behalf. He maintained that his black Blazer was stolen on November 6, 2001 before the robbery at the bank. He testified that he delayed reporting the vehicle stolen because he was looking for the vehicle himself and he was afraid to report it stolen because it was uninsured and believed he had a suspended registration. Petitioner denied participation in the bank robbery. T.T. 346-352.

At the close of proof, the jury found Petitioner guilty of Robbery in the First Degree. Petitioner was sentenced as a second violent felony offender to twelve and one-half years in prison with five years post-release supervision.

Petitioner appealed his conviction to the Appellate Division, Fourth Department, and his conviction was unanimously affirmed. People v. Johnson, 15 A.D.3d 890 (4th Dept. 2005). Petitioner sought leave to appeal to the New York State Court of Appeals, which was denied on May 16, 2005. People v. Johnson, 4 N.Y.3d 887 (N.Y. 2005).

On September 7, 2005, Petitioner filed the habeas corpus petition presently before this Court, in which he makes two claims. One claim is exhausted and properly before this Court. See 28 U.S.C. § 2254(b)(1)(A). The remaining claim, which Petitioner failed to properly exhaust in the state courts, is deemed exhausted but procedurally defaulted. See Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).

**III. General Principles Applicable to Habeas Review**

    **A.   The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

5

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the

state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

B.  **Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**IV. Petitioner's Claims**

**1.  Ground One - Ineffective Assistance of Trial Counsel**

Petitioner claims he was deprived of his Sixth Amendment right to effective assistance of counsel. In particular, he argues that, during *voir dire,* counsel failed to challenge a biased juror for cause. Petition (Pet.) ¶22A. Petitioner raised this claim on direct appeal to the Appellate Division, Fourth Department, and was rejected on the merits.

Respondent contends that this claim is exhausted, but that the state court's finding did not contravene or unreasonably apply

7

clearly established federal law. See 28 U.S.C. § 2254(d). This Court agrees.

A petitioner claiming ineffective assistance of counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). A Petitioner must establish both that counsel's performance was deficient and that he was prejudiced as a result of counsel's errors in order to obtain relief on an ineffective assistance of counsel claim. Id. at 687.

A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also, e.g., United States v. Jones, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's decisions should not be evaluated in hindsight).

Petitioner alleges trial counsel improperly allowed a "biased juror" ("C.T.") to be seated on the jury from the panel of prospective trial jurors. The allegedly biased juror indicated during *voir dire* that if the person who committed the crime was not

8

wearing a mask, the juror would be biased against that person.[1] Petitioner argued on appeal, and appears to assert in this action, that because trial counsel was aware that the proof at trial would establish that Petitioner was not wearing a mask[2] at the time of the robbery, his trial counsel rendered ineffective assistance for failing to seek removal of C.T. or to further question him after C.T. indicated he could not be impartial if the robber was not wearing a mask.

Nothing in this allegation, however, suggests that the alleged deficiency during *voir dire* was anything other than the reasonable exercise of counsel's professional discretion and reasoned

---

[1] The relevant portion of the *voir dire* of juror C.T. is as follows:

Defense Counsel: This has been touched on also. The subject matter here, a bank robbery, this is going to be a daytime situation, people in the bank. I'm sure we are going to hear from the bank teller, bank manager, security officer, allegation of a gun. Is there anything about any of this you think that is going to affect your impartiality or your judgment in this case? [C.T.]?

Juror C.T.: I guess I just want to know if he was wearing a mask. I mean, it is going to affect, if I know that now, it is going to affect my whole decision already. I just feel like I will be totally biased if he wasn't wearing a mask.

Defense Counsel: Was or was not?

Juror C.T.: If he was not.

Defense Counsel: We are talking about the person who robbed the bank?

Juror C.T.: I'm not talking about him. I'm talking about whoever it was.

Defense Counsel: I can't speak to the evidence in the case. I think there will be some testimony that the person's face was at least partially covered. Okay?

[2] The evidence at trial showed that the robber had a mask on at the time of the robbery, but that it did not cover the robber's face. Instead, it rested underneath his chin. T.T. 265.

9

judgment.  In hindsight, Petitioner faults his counsel because the strategy counsel employed to select a jury -- part of which involved seating C.T. as a juror in the case -- ultimately proved to be unsuccessful.  It is not the role of this Court, however, to second-guess counsel's reasonable strategic decisions at jury selection, especially considering that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 688.  Thus petitioner's allegation is insufficient to establish that his trial counsel's performance fell below an "objective standard of reasonableness" as required to establish a denial of petitioner's constitutional right to counsel.  Id. at 687.  Moreover, given the extensive evidence adduced against Petitioner at trial, Petitioner cannot show that it is more likely than not that the outcome of the trial would have been different if counsel had engaged in more rigorous questioning of C.T. or if the jury had been differently composed without juror C.T.  Without such actual prejudice, no Sixth Amendment violation is established.  Id. at 693.

Accordingly, this Court finds that the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law.  The claim must be dismissed.

### 2. Ground Two - Prosecutorial Misconduct

Petitioner contends that prosecutorial misconduct deprived him of his federal constitutional right to a fair trial. More specifically, he argues the prosecution inappropriately expressed his personal beliefs about the credibility of a defense witness, engaged in impermissible vouching, and, during summation, commented upon facts not in evidence. Pet. ¶22B. Petitioner raised this claim on direct appeal to the Appellate Division, Fourth Department. The Appellate Division rejected this claim on the merits, finding that "[Petitioner] was not denied a fair trial based on prosecutorial misconduct (internal citations omitted)." Johnson, 15 A.D.3d at 891. Petitioner did not raise this claim to the New York Court of Appeals in his leave application. See Leave Application of 02/09/05 (L.A.). Respondent argues, and this Court agrees, that Petitioner's failure to do so renders the claim unexhausted.

For exhaustion purposes, 28 U.S.C. § 2254(b)(1)(A) requires a petitioner "[to] give the state courts one full opportunity to resolve constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). This includes filing an application for discretionary appellate review with the State's highest court if that right is available by statute. Id. at 845;

11

accord Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000); Galdamez v. Keane, 394 F.3d 68, 72 (2d Cir. 2005).

Here, Petitioner filed an application for discretionary review with the New York Court of Appeals, but requested that the court review only his ineffective assistance of trial counsel claim. Petitioner's failure to request review of his prosecutorial misconduct claim renders the claim unexhausted for federal habeas review purposes. See Grey, 933 F.2d at 120-21 (finding Petitioner's habeas claims procedurally forfeited where Petitioner did not expressly request state's highest court to review all claims previously argued in his appellate brief); see also Jordan v. LeFevre, 206 F.3d 196 (2d Cir. 2000) (finding Petitioner did not adequately present claims to state's highest court and thus were barred from habeas review where Petitioner attached appellate brief to leave application without explicitly alerting state courts to each claim raised).

In this case, however, Petitioner's claim should be deemed exhausted, because state appellate review is no longer available to him. Petitioner cannot again seek leave to appeal the claim to the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. See N.Y. Court Rules § 500.10(a). Moreover, collateral review of this claim is also barred because it was previously raised and determined on the merits on direct appeal to the Appellate Division, Fourth

Department. See N.Y. Criminal Procedural Law ("CPL") § 440.10(2)(a). Therefore, although the claim is deemed exhausted, Petitioner is nonetheless procedurally barred from raising it in this proceeding.

A finding of procedural default bars habeas review of the federal claim unless Petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the claim will result in a miscarriage of justice. Murray v. Carrier, 477 U.S. 478, 492 (1986); Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977). Petitioner makes no showing of cause and prejudice or that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, this claim must be dismissed.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and

therefore denies leave to appeal as a poor person.  Coppedge v.
United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal
Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    September 30, 2009
          Rochester, New York